*J. T. Brown*, for the appellant.

Nov. Term, 1855.

RIDGWAY v. MILLIGAN.

---- ⸺◦•◦⸺ ----

RIDGWAY and Others *v.* MILLIGAN.

The bill in this case was ordered to be dismissed, because it was not adapted to any form of relief to which the plaintiff was entitled.

APPEAL from the *Grant* Circuit Court.

GOOKINS, J.—Bill in chancery by the *cestui que trust* against his trustee, to obtain the legal title to land. The bill charges that the trustee had fraudulently conveyed the land to a third person, who had notice of the plaintiff's equity. Decree for the plaintiff. The defendants appeal.

*Milligan*, the plaintiff, and the defendant *Ridgway*, purchased jointly a half section of land, of which *Milligan* was to have two hundred acres and *Ridgway* one hundred and twenty. They paid their respective shares of the purchase-money, and the land was conveyed to *Ridgway*. In *December*, 1847, *Milligan* sold eighty acres of his land to one *Jones* for 480 dollars, and gave him a bond for the legal title on payment of the purchase-money. *Milligan* and *Ridgway* afterwards made the following agreement:

"Memorandum of an agreement made this 29th day of *January*, 1849, by and between *L. P. Milligan* and *David Ridgway*, both of the county of *Huntington*, and state of *Indiana*, witnesseth, that whereas there is an agreement between said parties, written in pencil, bearing date about the 30th of *October*, 1844, which was for the same con-

Friday, December 14.

sideration and in part for the same covenants, which said agreement is hereby cancelled and made void; now the parties hereby agree as follows: That whereas the said *L. P. Milligan* has paid to the said *David Ridgway* the full consideration for the following described tract of land (here described), containing two hundred acres: Now it is hereby agreed that when the said *L. P. Milligan* shall settle a certain claim in favor of *Moses Harris* and *Joseph Wright*, of money which they are liable for to *John Bealle* and *Thomas Hogg*, of *Cadiz, Ohio*, as bail for said *Milligan*, then the said *Ridgway* agrees to make and execute a good and sufficient deed in fee simple for the aforesaid premises; but nothing in this writing shall be so construed as in anywise to cancel certain claims which the said *Milligan* holds against the said *Moses Harris*, dated the 27th *July*, 1845, none of which are taken into this account, but subject to any adjustment or settlement as though this contract had not been made. And the said *Ridgway* further agrees that if the said *Milligan* shall at any time wish to sell said premises, that by the said *Milligan* transferring the amount of the said claims to the said *Hogg* and *Bealle* of *Cadiz*, to the said *Ridgway*, either in notes for the purchase-money or in cash, the said *Ridgway* agrees to make said deed to the assignee of the said *Milligan*, and, further, the said *Ridgway* agrees to make a deed to *George H. Jones* for the tract of eighty acres, which the said *Milligan* sold to the said *G. H. Jones* upon the order of the said *Milligan* so to do.

" In testimony whereof we, the above parties, have hereunto set our hands and seals, this 29th *January*, 1849. *L. P. Milligan*, (seal). *David Ridgway*, (seal)."

The demands against *Milligan*, in favor of *Hogg* and *Bealle*, were for borrowed money, for which *Harris* and *Wright* were his sureties, and amounted originally to about 600 dollars, on which some payments had been made by *Milligan*. In *October*, 1849, *Milligan* sold a hundred and twenty acres of his land to one *Hart*, to whom *Ridgway* conveyed it, at *Milligan's* request, and he received *Hart's* note for 300 dollars on account of *Harris* and *Wright*.

When *Jones* purchased the eighty acres, he paid *Milligan* 200 dollars, and the residue was to be paid in carpenter work when called for. On the 12th of *October*, 1849, *Jones* assigned his title-bond to one *Job Ridgway*, who, on the 24th of *December* following, assigned it to the defendant *Pefley*. *Jones* paid the further sum of 40 dollars, which left 240 dollars due *Milligan* for this tract, which amount *Pefley* paid to the defendant *Ridgway*, who conveyed the land to him. *Pefley* had notice of the balance due *Milligan* in carpenter work, and also of the contract of *January* 29, 1849, before recited, which he inspected at the time of the transaction.

The parties have discussed that branch of the case which relates to the liabilities of *Milligan* to *Harris* and *Wright*, particularly in reference to the amount paid by *Ridgway*, but the view we shall take of the case will not require us to settle that matter.

We do not see upon what principle the decree of the Circuit Court can be sustained. The plaintiff insists that the contract of *January* 29th, 1849, was induced by the fraudulent representations of *Ridgway* that he had been employed by *Harris* and *Wright* to secure their claims, when in fact he was a mere volunteer, having no such authority. However that may be, the bill makes no case upon this point. It is not alleged that there was any fraud in the matter, nor does it propose to set aside that agreement. The plaintiff answers this by saying that when a bill has been drawn in ignorance of the facts which come out in the answer, relief will be given upon the case made by the bill and answer; and there are authorities for such a practice; *Deatly's Heirs* v. *Murphy*, 3 A. K. Marsh. 472; but the better practice is to amend the bill, when the new matter is disclosed.

The point is immaterial in this case, because the bill was not filed in ignorance of the facts relied upon to show that *Ridgway* was a volunteer. On the 11th of *May*, 1850, *Harris*, in answer to a letter from *Milligan*, wrote to him as follows: " As to my employing *David Ridgway* as my

agent, it is something new to me," &c.  The bill was not filed until *November* following.  On the receipt of this intelligence, *Milligan* might very properly have proceeded to relieve *Ridgway* of the duties he had officiously taken upon himself, but he did nothing, and it would appear from the evidence that all, or nearly all the payments made by *Ridgway* to the use of *Harris* and *Wright* were after that time.  It is evident that when *Milligan* filed his bill he did not intend to call in question the conduct of *Ridgway* in obtaining the agreement referred to.

It is said by the plaintiff, that the contract above recited, bound *Ridgway* absolutely to convey the eighty acres of land, whenever *Milligan* should request it, and that it had nothing to do with the previous stipulation concerning the claim of *Harris* and *Wright*.  That is true; but to whom was the conveyance to be made?  Not to *Milligan*, but to *Jones*, to whom *Milligan* had sold the land.  How can he call for the legal title against his own bond held by *Pefley* as assignee?  It is said that *Pefley*, when he paid the residue of the purchase-money, and received the deed, had notice that there was a balance due *Milligan* of the purchase-money.  The proof sustains this position; and if this were a bill to enforce a vendor's lien, *Pefley* could not avail himself of the payment thus made, unless he could show that *Milligan* had received the full benefit of it; but it furnishes no ground for *Milligan* to claim the legal title.  He does not ask to rescind his sale, nor to set aside his bond, but claims the land in the face of it.  The plaintiff has mistaken his remedy, and can have no relief under this bill.  He might also proceed against *Ridgway* as his trustee, and compel him to account, but this bill is not adapted to that kind of relief.

The bill must be dismissed, but without prejudice to the right of *Milligan* to enforce his vendor's lien, or to compel *Ridgway* to account as he may elect.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, with instructions to the Circuit Court to dismiss the bill, saving the right of *Milligan* to enforce his

lien for the purchase-money, or to compel his trustee,
*Ridgway*, to account.

D. *Kilgore* and I. *Blackford*, for the appellants.

L. P. *Milligan*, J. R. *Slack* and W. *March*, for the appellee.